FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2011 SEP 20 P 2: 12

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KERRY WOODARD | * | |
| Plaintiff | * | |
| v | * | Civil Action No. RDB-11-1097 |
| DAYENA CORCORAN | * | |
| Defendant | * | |
| | *** | |

## MEMORANDUM OPINION

Pending is Defendant's Response to Show Cause[1] which has been construed as a Motion for Summary Judgment. ECF No. 15. Plaintiff Kerry Woodard ("Woodard") has responded to the allegations raised by Defendant. ECF No. 18 – 24.

### Background

This case concerns Woodard's ongoing allegations that he is continually victimized by prison gang member and sympathetic correctional officers. ECF No. 1. The Complaint filed in this case alleged that Sergeant Bullock, a female correctional officer, told other inmates at Maryland Correctional Institution at Jessup (MCIJ) that Woodard is a snitch. Woodard was assaulted by two inmates at the Metropolitan Transition Center (MTC) who are alleged members of a prison gang; Woodard is the chief witness in the criminal prosecutions.[2] Woodard maintains that he is targeted for violence both because the prison gangs have labeled him a snitch and

---

[1] Woodard sent correspondence to the undersigned concerning pending criminal charges against his assailants which included pictures of the head injuries he received. Although copies of those documents were sent to counsel for a response, they were never docketed in this case. See ECF No. 15 at Ex. A, p. 2, ¶ 2. The Clerk will be directed to docket them with this Memorandum Opinion and to provide copies to Woodard for his records.

[2] A *nolle prosequi* disposition of charges against one defendant, Patrick Carnell, was entered on September 6, 2011. *State v. Carnell*, Baltimore City Cir. Ct., Case No. 111003011; http://casesearch.courts.state.md.us/inquiry/inquiry-index.jsp. Charges of attempted murder, assault, reckless endangerment and use of a deadly weapon with intent to injure against the remaining defendant, Matthew Robertson, remain pending. See *State v. Robertson*, Baltimore City Cir. Ct., Case No. 111101031; http://casesearch.courts.state.md.us/inquiry/inquiry-index.jsp.

because he was a witness to the death of another inmate at Western Correctional Institution (WCI).[3] Thus, he claims both inmates and officers are hostile against him.

Defendant's Response to Show Cause states that Plaintiff was transferred from MCIJ to WCI, making his request for injunctive relief (transfer from MCIJ) moot. ECF No. 15. This Court noted, however, that Woodard's initial request for injunctive relief sought transfer to federal custody. In light of that fact, Woodard was provided an opportunity to provide evidence that he will suffer irreparable harm if his request for transfer to federal custody is not granted. ECF No. 16 and 17. Woodard was also directed to respond to the allegations raised by Defendant indicating that his allegations against Bullock could not be supported by credible evidence and appeared to be his effort to get back at Bullock for charging him with disciplinary violations. Additionally, Defendant noted that Woodard had not voiced any concerns regarding his safety since his transfer to WCI. ECF No. 15.

### Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

---

[3] Ifeanyi A. Iko was an inmate who died while in Division of Correction Custody after being subjected to pepper spray and constrained with a spit mask. *See Iko v. Galley*, Civ. Action DKC-04-3731 (D. Md.2004).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

In order to prevail on an Eighth Amendment claim of failure to protect from violence, Plaintiff must establish that Defendant exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987). "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833- 34 (1994) (citations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

he must also draw the inference." *Id* at 837. *See also Rich v. Bruce*, 129 F. 3d 336, 339– 40 (4th Cir. 1997).

Woodard states that Defendant has failed to show any reasonable expectation that he will not be physically harmed again. ECF No. 19. He explains that once correctional officers tell members of prison gangs that an inmate is a snitch and word gets out that the inmate is a witness against gang members, that status follows that inmate no matter where he is incarcerated. *Id*. Woodard maintains that the endangerment to his physical safety is thus capable of repetition. He insists that his case establishes this by virtue of the fact that he has been assaulted repeatedly in various prisons.

Woodard alternately claims he cannot be safely housed in any Maryland facility and should be transferred to federal custody, to another state, or to a minimum security prison. ECF No. 18 (transfer of custody) and ECF No. 21 at pp. 6 – 7 (minimum security). He explains that there are "not that many violent gang members" in minimum security prisons, but he has been denied a transfer to such a facility. ECF No. 21 at p. 6. Defendant does not dispute that Woodard has been targeted by the prison gang known as Dead Men Incorporated (DMI) and in fact placed him on administrative segregation pending investigation after he was transferred to WCI and staff became aware of his issue with DMI. ECF No. 15 at Ex. B. Woodard disputes that any measures taken by correctional staff to protect him are of any value so long as he remains in Maryland. ECF No. 18 – 21.

In support of his allegation that he is a target for violence by correctional officers, Woodard claims he was a witness to Ifeanyi Iko's death and that his name was in newspapers as a witness to the incident. ECF No. 22. He attaches a newspaper article which mentions his name in the context of Iko's death; however, the article is actually about Woodard's previously

filed case in this Court. *Id.* at pp. 6 – 7, *see Woodard v. Warden*, Civil Action RDB-05-1095 (D. Md. 2005) (motion for injunctive relief denied after two day hearing). There has never been any verification that Woodard was involved in either the criminal investigation following Mr. Iko's death, or the civil case filed in this Court by Mr. Iko's family. Woodard's claims regarding correctional staff have been investigated by the Internal Investigation Unit (IIU) for the Division of Correction and no evidence has been discovered to support the allegation. In addition, Woodard has been unable or unwilling to name witnesses who could substantiate his claims about correctional staff. ECF No. 15 at Ex. A, p. 3.

Notwithstanding the lack of witnesses, Woodard has suffered numerous assaults which have left him with lasting injuries. *See* ECF No. 1 at pp. 5 – 8. One of those attacks resulted in the initiation of two criminal prosecutions. Thus, the dangers posed to Woodard by his fellow inmates are real and his unwillingness or inability to name individual inmates as enemies does not detract from his justified fear of future violent attacks. Against this background, the Court is unwilling to find Woodard's request for injunctive relief to be moot simply by virtue of his transfer to WCI. To the extent that Woodard is currently assigned to restrictive housing, disciplinary segregation, where his exposure to general population inmates is limited, and in light of Defendant's assertion that his claims of being targeted by the DMI are being investigated, there appears to be no basis for this Court's interference with the management of Woodard's assignment at this time.

Defendant indicates that:

> The result of the current inquiries mentioned above may well be a transfer of Woodard to another state through the provisions of the Interstate Corrections Compact, which would alleviate his concerns about incarceration in a Maryland prison without requiring the intervention of this Court. In the meantime, his segregated confinement provides for his safety.

ECF No. 15 at p. 7, fn. 3. The response was filed on June 16, 2011, and there has been no further updates regarding the status of the investigation or intentions with respect to Woodard's housing assignment. Accordingly, the Court will require counsel to update the response with information regarding the investigation into Woodard's claims and plans, if any, to transfer Woodard to either another state or to federal custody.

A separate Order follows.

SEPT. 19, 2011
Date

/s/ Richard D. Bennett
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE