IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2012 JAN 17 P 2:34

CLERK'S OFFICE
AT BALTIMORE

| | | |
|---|---|---|
| KERRY WOODARD | * | |
| Plaintiff | * | |
| v | * | Civil Action No. RDB-11-1097 |
| DAYENA CORCORAN | * | |
| Defendant | * | |

\*\*\*

## MEMORANDUM OPINION

Pursuant to this Court's Order of September 20, 2011, the parties have filed status reports concerning Plaintiff Kerry Woodard's (Woodard) housing assignment and efforts to protect him from being targeted by prison gangs. This matter is now ripe for dispositive review.

### Background

The facts of this case were set forth in this Court's September 20, 2011 Memorandum Opinion. ECF No. 26. Briefly, this case concerns Woodard's ongoing allegations that he is continually victimized by prison gang members and sympathetic correctional officers. ECF No. 1. The Complaint filed in this case alleged that Sergeant Bullock, a female correctional officer, told other inmates at Maryland Correctional Institution at Jessup (MCIJ) that Woodard is a "snitch." Woodard was assaulted by two inmates at the Metropolitan Transition Center (MTC) who are alleged members of a prison gang; Woodard is the chief witness in the criminal prosecutions. Woodard maintains that he is targeted for violence both because the prison gangs have labeled him a snitch and because he was a witness to the death of another inmate at Western

Correctional Institution (WCI).[1] Thus, he claims both inmates and officers are hostile against him.

Initially Defendant claimed Woodard's transfer from MCIJ to WCI made his request for injunctive relief moot. ECF No. 15. Because Woodard's request was for transfer to federal custody, he was provided an opportunity to provide evidence that he would suffer irreparable harm if his request for transfer to federal custody was not granted. ECF No. 16 and 17. In support of his request Woodard provided evidence that he has been assaulted on numerous occasions and has been targeted by the prison gang known as the Dead Men Incorporated (DMI). ECF No. 18 and 21. Woodard is scheduled to testify in a criminal trial against two member of the gang who assaulted him. Defendant did not dispute that Woodard has been targeted by the DMI and, in response to becoming aware of that fact, they placed Woodard on administrative segregation limiting his exposure to general population inmates who may have harmed him. ECF No. 15 at Ex. B. The disputed fact between the parties has been whether or not any measures taken to protect Woodard within the confines of the Maryland Division of Correction would be effective. ECF No. 18 – 21.

Woodard has suffered numerous assaults which have left him with lasting injuries. *See* ECF No. 1 at pp. 5 – 8. One of those attacks resulted in the initiation of two criminal prosecutions. The dangers posed to Woodard by his fellow inmates are real and his unwillingness or inability to name individual inmates as enemies does not detract from his justified fear of future violent attacks. Against this background, the Court was unwilling to find Woodard's request for injunctive relief to be moot simply by virtue of his transfer to WCI. However, Woodard's assignment to restrictive housing where his exposure to general population

---

[1] Ifeanyi A. Iko was an inmate who died while in Division of Correction Custody after being subjected to pepper spray and constrained with a spit mask. *See Iko v. Galley*, Civ. Action DKC-04-3731 (D. Md.2004).

inmates is limited and the ongoing investigation into any threats against Woodard by the DMI made this Court's interference with the management of Woodard's assignment unwarranted. Additionally, Defendant indicated that a transfer to another state was being considered. ECF No. 15 at p. 7, fn. 3.

In a status report dated December 14, 2011, counsel indicated that Woodard's confinement to disciplinary segregation would conclude on December 18, 2011, at which time he would be "housed indefinitely on administrative segregation." ECF No. 35. At that time the ongoing investigation into Woodard's claim that he is a target of the DMI, revealed that no one in the gang had heard of Woodard. *Id.* On December 29, 2011, counsel filed another status report indicating that Woodard changed his mind and now believes he could be safely housed at Western Correctional Institution (WCI) in general population. ECF No. 37. The report includes a declaration under oath from Lt. Michael Malloy who interviewed Woodard and witnessed Woodard sign a waiver declining protective custody. *Id.*

In correspondence filed by Woodard, he alleged first that WCI was not safe and was locked down due to several stabbings. ECF No. 36. He argued correctional officials could put him on protective custody, rather than administrative segregation where he cannot earn any good conduct credit. *Id.* Subsequently, and in response to Defendant's status reports, Woodard states that the DMI members are on lock down status at WCI; he prefers to be assigned to a housing status that permits him to earn good conduct credit; and he would like to be transferred to a minimum security prison where he can earn credits and shorten his sentence. ECF No. 39.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

### Analysis

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *United States v. Hardy*, 545 F. 3d 280, 283 (4th Cir. 2008) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). The parties must continue to have a

"personal stake in the outcome" of the lawsuit. *Id.* at 478 (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)). "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Spencer*, 523 U.S. at 7 (quoting *Lewis*, 494 U.S. at 477). "The inability of the federal judiciary to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." *United States v. Hardy*, 545 F. 3d 280, 283 (4th Cir. 2008) (quoting *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974)).

The undisputed facts establish that measures have been taken to protect Woodard from violence through investigations and special housing assignments. While Woodard's concern is obtaining a safe housing assignment where he can earn good conduct credits, an understandable concern, such an accommodation is not constitutionally required. The Court finds that Defendant has discharged his duty to investigate Woodard's claims and to secure safe housing for him. Accordingly, the Complaint will be dismissed as moot. A separate Order follows.

January 13, 2012
Date

RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE

5